CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
DEC 05 2012
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| MICHAEL DAVID NASH, | CASE NO. 5:12CV00077 |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| OFFICER JASON TAYLOR, et al., | |
| Defendants. | By: B. WAUGH CRIGLER |
| | U.S. MAGISTRATE JUDGE |

Plaintiff brings this *pro se* action under 42 U.S.C. § 1983. On August 28, 2012, this case was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct proceedings and render a report and recommended disposition on dispositive motions. For the reasons set forth below, the undersigned RECOMMENDS that the presiding District Judge enter an Order GRANTING the August 24, 2012 motion to dismiss filed by defendants Judge William G. Barkley, Judge Cheryl V. Higgins, and Magistrate Michelle Jovan Scott; GRANTING the August 29, 2012 motion to dismiss filed by defendant Debra M. Shipp; GRANTING the August 29, 2012 motion to dismiss filed by defendant Jon R. Zug; GRANTING the August 29, 2012 motion to dismiss filed by defendants Fred Kirschnick, Kevin Sprouse, and Bob Villwock; and GRANTING the August 29, 2012 motion to dismiss filed by defendants County of Albemarle and Jason Taylor.

**FACTUAL BACKGROUND**

According to plaintiff's Complaint and the plethora of documents plaintiff filed with the Complaint under the title "Affidavits," the facts are alleged as follows: On March 18, 2011 at approximately 1:30 a.m., Officer Jason Taylor, an officer with the Albemarle County Police Department, turned his cruiser lights on a car driven by plaintiff. Plaintiff proceeded to the Park and

Ride parking lot, which was approximately one-quarter of a mile away. Plaintiff pulled up next to the parked car of Ken Shankle, a passenger in the car. Plaintiff and Shankle exited the car. Officer Taylor shouted "Get back in the car!" Plaintiff and Shankle got back in the car, and Officer Taylor approached the car. Officer Taylor advised plaintiff that he was stopped for an outage in one of his rear tail lights, and he asked plaintiff for his license and registration. Plaintiff produced what he describes as a "publicly filed document."[1] The document stated plaintiff's identification and status and asserted the lack of formal jurisdiction of the law enforcement officer.

Officer Taylor ordered plaintiff out of the car and told him that he would be forcibly and physically removed if he did not comply. Plaintiff complied, but Officer Taylor placed him against the car and put him in handcuffs. Plaintiff was taken by Officer Taylor to the Charlottesville Regional Jail where he was interrogated for over an hour.

Plaintiff was then taken before Magistrate Michelle Jovan Scott, and he provided her with his "publicly filed document." Magistrate Scott ignored the identification and failed to provide plaintiff with a sworn statement of probable cause.

Plaintiff was then brought before Judge William G. Barkley for an arraignment via video conference. Plaintiff was charged on Commonwealth of Virginia warrant forms with (i) falsely identifying oneself to a law enforcement officer with the intent to deceive under Va. Code § 19.2-82.1 and (ii) driving a motor vehicle on a highway without having obtained a valid driver's license under Va. Code § 46.2-300. Plaintiff's bond was set, and he was released that same day.

On May 6, 2011, plaintiff appeared on the state court warrants, and from the documents filed in support of his Complaint, the General District Judge granted an amendment of the driving charge. The charges were originally brought under Va. Code § 46.2-300, but they were amended to "driving while

---

[1] This document never was identified in the pleadings or at the hearing.

suspended" under Va. Code § 46.2-301. Plaintiff was found guilty and sentenced to 10 days in jail, all of which was suspended, and he was placed on probation for a period of 2 years.[2] (Dkt. No. 1-14, p. 12.)

It appears that plaintiff thereafter appealed his General District Court conviction to the Albemarle County Circuit Court ("Circuit Court"). While the appeal was pending, plaintiff filed a motion challenging the jurisdiction of the Commonwealth and its courts, essentially on the basis that he is a sovereign citizen not engaged in commercial activity who is free from the authority of the Commonwealth over his claimed "right to travel." The documents plaintiff incorporated in his Complaint also reveal that he filed a similar motion in the Circuit Court citing a similar basis for the motion.

On December 21, 2011, plaintiff was tried before a jury in the Circuit Court. He was found guilty of driving on a suspended license, but he was found not guilty of falsely identifying himself to an officer. The presiding Circuit Judge sentenced plaintiff to 13 months[3] in jail and remanded him to the custody of the Sheriff. By all accounts, plaintiff served his sentence and never appealed the final judgment of the Circuit Court.

**PURPORTED CLAIMS**

Notwithstanding the defendants' challenges to the sufficiency of plaintiff's allegations, and although a good portion of his claims appear self-contradictory, some effort by the court should be made to discern the causes of action plaintiff has pleaded. Plaintiff's First Cause of Action and Second Cause

---

[2] The Complaint does not articulate, with any specificity, the outcome of the false identification charge in General District Court. Plaintiff does, however, plead that both the amended driving and false identification charges were later the subject of a jury trial on his appeal to the Circuit Court.
[3] The driving while suspended charge carried with it up to 12 months in jail. The Complaint alleges that plaintiff also was found in contempt three times, and that his sentence included an additional 30 days on these contempt violations.

3

of Action appear to arise out of his arrest, which he alleges was without probable cause and was the result of improper training and supervision by the County of its "Police Officers, Deputies, Judges, and other Officers." Included in his Second Cause of Action is an allegation that the County of Albemarle and Debra M. Shipp essentially failed to discharge the duties of their offices in recording and providing copies of various documents, including oaths of office and bonds, and in failing to "give directions" on how to obtain them within a reasonable time.

Plaintiff's Third Cause of Action lies against the arresting officers, the state court clerk, and the judges of the court. Plaintiff alleges a deprivation of his liberty interests and the infliction of cruel and unusual punishment. Specifically, he asserts liability of the County under the doctrine of respondeat superior.

When asked by the undersigned to clarify what he intended to assert in his claims, plaintiff explained that "the issue at heart" in this case is his claim that the entire process was "void" because neither the arresting officers, the local magistrate, the general district judge, the circuit court, nor those taking him into custody upon sentencing had jurisdiction (either the right to exercise power or the authority of process) over him as a sovereign citizen not engaged in a commercial activity.[4]

## THE MOTIONS TO DISMISS

### Judge Higgins, Judge Barkley and Magistrate Scott

Circuit Judge Cheryl Higgins, General District Judge William Barkley, and local Magistrate Michelle Scott have moved to dismiss on several grounds. They assert the lack of subject matter jurisdiction and ask the court to abstain under the *Rooker-Feldman* doctrine. They further contend that

---

[4] The undersigned inferred from this explanation that the balance of his claims against the state court clerk arise from his efforts to secure court-related records which related either to the events giving rise to this case or his challenge to the legitimacy of the state court officials' holding office.

4

the court should dismiss the Complaint for failure to state a claim, despite its prolixity, or find that each enjoyed absolute immunity.

The challenge by these defendants to the court's subject matter jurisdiction simply requests the court to assess its jurisdiction. Of course, the Civil Rights Act of 1964, as amended, confers subject matter jurisdiction and the undersigned so finds. However, whether the application of the *Rooker-Feldman* doctrine presents a jurisdictional bar is a different matter. "The *Rooker-Feldman* doctrine bars lower federal courts from considering not only issues raised and decided in the state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court." *Washington v. Wilmore*, 407 F.3d 274, 275 (4th Cir. 2005) (quoting *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983)). The *Rooker-Feldman* doctrine "prevents 'a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court.'" *Henrichs v. Valley View Dev.*, 474 F.3d 609, 611 (9th Cir. 2007) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). U.S. District Courts do not have jurisdiction to review final state court judgments because Congress has vested that appellate jurisdiction in the United States Supreme Court. *See* 28 U.S.C. § 1257(a). Thus, a party seeking review of a state court decision first must exhaust his or her appellate rights to the highest court of the state before seeking a writ of certiorari for review by the United States Supreme Court. The *Rooker-Feldman* doctrine bars those who lose in state court from bypassing this appeal process and seeking review in a U.S. District Court.

The Supreme Court narrowed the scope of the doctrine, however, by limiting its application to only when the following conditions are met: (1) the federal court plaintiff lost in state court; (2) the plaintiff complains of "injuries caused by state-court judgments;" (3) the state court judgment became final before the proceedings in federal court commenced; and (4) the federal plaintiff "invit[es] district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544

5

U.S. 280, 284 (2005); *see Lance v. Dennis,* 546 U.S. 459, 464 (2006) (emphasizing the "narrowness" of the *Rooker-Feldman* doctrine). It is important to these proceedings to note that the *Exxon Mobil* Court took some pains to clarify the term "injuries caused by state-court judgments," particularly when considering the application of the Full Faith and Credit Act, 28 U.S.C. § 1738. The Court revealed that in order to avoid the bar of *Rooker-Feldman*, a plaintiff must present "some independent claim," even though that claim may seek relief inconsistent with the legal conclusions reached in state court. *Exxon Mobil Corp.*, 544 U.S. at 293.

Soon thereafter, the Fourth Circuit Court of Appeals addressed the application of *Exxon Mobil* to a case brought by a terminated Virginia employee under federal anti-discrimination laws whose appeal of his state law grievance had been dismissed by a Virginia circuit court. *Davani v. Va. Dept. of Transportation*, 434 F.3d 712 (4th Cir. 2006). The court essentially held that Davani's federal claims were independent of those adjudicated under the state law grievance process, and that an adverse decision on the grievance did not bar his federal action under the *Rooker-Feldman* doctrine even though the results in federal court might differ from those in the state court. *Id.* The *Davani* court made clear that if the federal plaintiff is not challenging the state-court decision, the *Rooker-Feldman* doctrine does not apply. *Id.*

However, the undersigned believes that an action which asks a federal court essentially to declare void a decision of a state court and, in turn, award damages based upon the processes which were administered by the state court judges, and not something independent of those proceedings, falls squarely within the *Rooker-Feldman* doctrine. This is particularly so where, as here, plaintiff exercised his state law rights and first appealed Judge Barkley's decision to the Circuit Court, but then bypassed

6

an appeal of the final judgment entered by Judge Higgins.[5] The undersigned is of the view that the motion to dismiss these defendants under *Rooker-Feldman* should be sustained, and it is RECOMMENDED.

Alternatively, there is no question that Judges Barkley and Higgins and Magistrate Scott enjoy absolute immunity from a § 1983 suit for actions they took in their judicial capacities. *See King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992); *Pressly v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987). The circumstances giving rise to plaintiff's complaint all spring from his belief that, as a sovereign citizen, he is immune from the application of state law regulating his use of the highways to him as a sovereign citizen, not from alleged misconduct of those judges beyond the scope of their duties. In fact, it is beyond peradventure that the conduct of which plaintiff complains against each of these defendants centers on each judge's discharge of his or her judicial duties.

Magistrates are vested with the authority to issue arrest warrants. Va. Code § 19.2-45(1). General District Courts are vested with authority not only to make further probable cause determinations, but they may fix bail and try misdemeanor charges, such as the ones brought against plaintiff in this case. Va. Code § 16.1-123.1. Moreover, the Circuit Court was vested with authority to hear appeals of convictions in the general District Courts. Va. Code §§ 16.1-126, 17.1-513.[6] Plaintiff's bare assertion here that his arrest lacked probable cause does not negate the jurisdictional authority for

---

[5] The undersigned will not recite the litany of complaints of error plaintiff assigned to the two trial judges. Suffice it to say, they are the very kinds of alleged error that form the bases for appeals, and they would include whether the Virginia courts possessed the power to hear misdemeanor charges against one claiming to be a sovereign citizen.

[6] It is interesting that plaintiff challenges the jurisdiction of the very court whose jurisdiction he invoked on appeal from the General District Court. It does not seem a stretch to infer that if he had been acquitted by the jury, he would have been satisfied with its jurisdiction. Plaintiff cannot have it both ways, namely to invoke the appellate jurisdiction of the Circuit Court and its duly empanelled jury, and then challenge the conduct of the court to be outside its jurisdiction in subsequent proceedings like these.

the actions originally taken by Judge Barkley or by Judge Higgins on an appeal and trial before a jury. The course that was available to challenge both the authority of the lower Virginia courts and their exercise of it was to appeal to the Virginia Court of Appeals and beyond, which plaintiff did not choose to pursue. Be that as it may, there are no facts in the pleadings which demonstrate that these judges shed their immunity for § 1983 purposes. The motion to dismiss these judicial defendants should be sustained, and the undersigned so RECOMMENDS.

The court need not address whether plaintiff's complaint satisfies the requirements of Fed. R. Civ. P. 8 under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (*"Iqbal"*) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (*"Twombly"*) because the issues raised under those cases have been rendered moot by the application of judicial immunity. Suffice it to say, however, that the undersigned is of the view that plaintiff could not assert valid claims against any of the three judicial officers on the facts he has alleged in the Complaint and incorporated affidavits. At best, his allegations against the judicial defendants are nothing more than assignments of error which could have been preserved on appeal and do not rise to the level of asserting constitutional violations, whether within or beyond their judicial authority. In other words, if required to address the sufficiency of the pleading, the undersigned would find he has failed to state a cognizable claim against these defendants, and on this ground their motion to dismiss should be granted.

### Albemarle Circuit Court Clerk, Debra M. Shipp

Debra Shipp seeks dismissal for the following reasons: 1) *Rooker-Feldman* abstention doctrine applies; 2) there is or was an adequate state remedy for the vindication of plaintiff's alleged property rights; 3) plaintiff has failed to state a plausible claim for violation of his constitutional rights; and 4) she is entitled to Eleventh Amendment immunity for actions taken in her official capacity.

There is little question that, at the core, plaintiff is claiming relief here because he believes Shipp did not perform her functions as required by state law. His first claim is that Shipp refused to file a motion because it was untimely. Plaintiff could have sought, but has not asserted he did seek, relief from the Circuit Court Judge for the clerk's alleged conduct. Second, whether the clerk's actions constituted process error certainly could have been, but was not, appealed to the Virginia Court of Appeals once final judgment was entered. As before, all of the elements of a *Rooker-Feldman* defense have been met. Thus, Shipp's motion should be sustained as a matter of law, and it is so RECOMMENDED.

Plaintiff claims that certain individuals, on his behalf, sought and paid for copies of records, particularly the oaths of office of the state prosecutors and the judges, but that those records were not provided. He further alleges that Shipp committed a constitutional violation by not recording the oaths of office.[7] It is well-established that relief under § 1983 is not available for the vindication of property rights where there is an adequate state remedy. *Parratt v. Taylor*, 451 U.S. 527, 543-544 (1981)[8]; *Hudson v. Palmer*, 468 U.S. 517, 535 (1984). The theory behind this, of course, is that a person has not been deprived of due process when he has not invoked the state law processes that are or were available. State civil remedies have been available to the plaintiff to recover the alleged overpayment, including a warrant in debt, an action on the clerk's bond, or even a mandamus proceeding to require Shipp to perform any non-discretionary function she was duty-bound to perform. Shipp's motion to dismiss should be sustained on this ground, and it is so RECOMMENDED.

Furthermore, a *pro se* litigant may assert only those claims under § 1983 that are personal to the litigant. In other words, the right to litigate for oneself in federal court without counsel does not give

---

[7] Apparently this claim is asserted under the Constitution of Virginia, not the Constitution of the United States.
[8] *Parratt* was overruled on other grounds in *Daniels v. Williams*, 474 U.S. 327 (1986).

9

rise to a right to litigate for others. *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975). According to plaintiff's pleading, he neither personally requested the documents from the clerk nor advanced the fees to pay for them. Plaintiff has failed to allege that the claim he asserts for the clerk's failures in these respects is personal to him. Therefore, that portion of the claim alleging damages as a result of any failure to provide court records or documents which were paid for by others but allegedly not provided should be dismissed. It is so RECOMMENDED.

Moreover, § 1983 was not designed to grant authority to the federal courts to compel a state official to perform his or her duties under state law. *Cf. Moye v. Clerk, DeKalb County Superior Court*, 474 F.2d 1275 (5th Cir. 1973); *Craigo v. Hey*, 624 F.Supp. 414 (S.D.W.Va. 1985). To the extent plaintiff seeks here to compel Shipp to perform her alleged duty under state law to produce court records, the Complaint should be dismissed.

Finally, despite the prolixity of the pleadings, plaintiff has failed to plead sufficient facts, as opposed to conclusions, as required by *Iqbal* and *Twombly*, to state a claim for relief. Shipp's motion to dismiss should be sustained on this ground, and it is so RECOMMENDED.

### Assistant Commonwealth's Attorney Jon R. Zug

A state prosecutor enjoys absolute immunity for all actions taken in discharge of his duties to prosecute criminal cases, which includes misdemeanors. *Imbler v. Pachtman*, 424 U.S. 409, 422 (1976); *see Andrews v. Ring*, 266 Va. 311, 320, 585 S.E.2d 780, 784-85 (Va. 2003) (immunity under state law). However one wishes to read plaintiff's Complaint and the attachments incorporated in it, it cannot be disputed that at all times Zug was acting in his official capacity as prosecutor. His motion to dismiss on this ground should be sustained, and it is so RECOMMENDED.

Moreover, this claim, if no other, is comprised of conclusions and labels, rather than facts sufficient to pass muster under *Iqbal* and *Twombly*. Zug's motion to dismiss on this ground is well taken and should be sustained irrespective of his immunity.

Plaintiff also seems to lump Zug into his argument that the Commonwealth and its courts had no authority to prosecute him as a sovereign citizen. These allegations should be dismissed under the *Rooker-Feldman* doctrine because they could have been raised on appeal, but they were defaulted by plaintiff's failure to appeal the judgment on his conviction.

### Deputy Sheriffs Fred Kirschnick, Kevin Sprouse, and Bob Villwock

Deputy Sheriffs Fred Kirschnick, Kevin Sprouse, and Bob Villwock seek dismissal on the following grounds: 1) federal abstention; 2) qualified immunity; 3) Eleventh Amendment immunity; and 4) plaintiff's failure to state a claim upon which relief can be granted.

Plaintiff first seems to complain that, during his trial, the number of courtroom bailiffs was increased from one to seven. The undersigned is unaware of any authority establishing that plaintiff had a constitutional right to a fixed number of court security personnel assigned to state court proceedings.

Next, plaintiff complains that the defendants "rushed" toward him when they took him into custody as directed by the Circuit Judge at the end of the trial after he was found guilty of driving on a suspended license. Plaintiff's allegations in this regard fall far short of those required to establish the use of unreasonable force in securing his custody after trial. Even if plaintiff is found to have pleaded the use of some force, the affidavits submitted and incorporated in the Complaint clearly establish as a

11

Case 5:12-cv-00077-MFU-BWC   Document 37   Filed 12/05/12   Page 11 of 16   Pageid#: 347

matter of law that no constitutional right was violated under the circumstances plaintiff alleges.[9] *See Wilson v. Flynn*, 429 F.3d 465, 467 (4th Cir. 2005).

Most significantly, these defendants are sued in their official capacities. The office of Sheriff is one established by Va. Const. art. 7, § 4, and as such, the Eleventh Amendment bars plaintiff's claims for damages against the officers acting in their official capacities. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Therefore, it is RECOMMENDED that the motions to dismiss filed by Fred Kirschnick, Kevin Sprouse, and Bob Villwock be sustained with prejudice to plaintiff's claims which are against them in their official capacities.

**County of Albemarle and Jason Taylor**

Apart from plaintiff's claim that Virginia and its political subdivisions have no authority to regulate and enforce a private citizen's use of highways within its boundaries, the gravamen of plaintiff's Complaint against Jason Taylor, an officer with the Albemarle County Police Department, seems to be that there was an absence of probable cause for the initial stop and the charges that followed. However, in plaintiff's own affidavit setting forth the facts relating to the stop, plaintiff states that the stop was "for an outage of the rear tail light/marker light." Moreover, plaintiff concedes that he did not produce a valid operator's license as required by Virginia law. Va. Code § 46.2-300 (later amended to driving while suspended under Va. Code § 46.2-301). If that were not enough to establish probable cause both for the stop and the charge, and it was, probable cause was established beyond peradventure by the fact that plaintiff was convicted in the General District Court of both offenses resulting from the stop and was convicted by the jury of the charge of driving while suspended arising

---

[9] Plaintiff was found in contempt by the trial judge. Even construing the Complaint in a light most favorable to him, plaintiff's conduct before Judge Higgins provided a reasonable basis for enhanced security.

12

out of the stop when he took an appeal to the Circuit Court. To the extent well pleaded, plaintiff fails to state a claim under § 1983 for an alleged unconstitutional arrest by Officer Taylor.[10]

Plaintiff's Complaint against Albemarle County is a bit more complex. First, he alleges that the County has engaged in a practice of depriving persons of liberty and property "without probable cause." As stated previously, plaintiff, as a *pro se* litigant, can only seek the vindication of his rights, and not those of others. Because plaintiff's own pleadings establish probable cause for his arrest and the charges that followed, this allegation fails to state a claim upon which relief can be granted and should be dismissed. It is so RECOMMENDED.

Plaintiff also asserts what appears to be a claim for the County's failure to train and supervise. The claim appears to include a failure to train and supervise not only its police officers, like Officer Taylor, but also the clerk and the judicial officers who have been joined as defendants. Plaintiff further appears to claim that, through its policy-making process, the County is liable for damages he allegedly incurred. Absent participation in the alleged events giving rise to this case or a showing of tacit authorization of them, and absent an articulation of the policies which allegedly caused a deprivation of a person's constitutionally protected rights, a local government entity cannot be held vicariously liable under the doctrine of respondeat superior. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978); *Board of County Commissioners of Bryan County (Bryan) v. Brown*, 520 U.S. 397, 398 (1997) (suggesting that a "deliberate indifferent" standard be applied); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990). The County has no statutory authority

---

[10] Plaintiff asserts in his affidavit that he did not consent to being placed in the "emergency vehicle," presumably the police cruiser, to be taken to the magistrate's office. An arrest is a process by which one is taken into custody by law enforcement officials. While the person arrested may or may not resist, consent to be arrested is not constitutionally required. Once the person is arrested, there are constitutionally guaranteed processes for establishing the basis for the arrest. The facts set forth in plaintiff's Complaint and incorporated documents clearly show these were followed, irrespective of whether plaintiff believes those involved had the requisite jurisdictional authority.

13

over the Sheriff, his deputies, or the Albemarle County Circuit Court Clerk, as the Sheriff and Clerk are independent constitutional officers under the Virginia Constitution, nor does the County exercise a supervisory role over the judicial officers who are parties to this case. Accordingly, nothing pleaded in this case is sufficient to invoke the doctrine of respondeat superior.

For these reasons, the motions to dismiss filed by Officer Taylor and the County of Albemarle should be granted, and it is so RECOMMENDED.

**"The Issue at Heart" or "The Heart of the Matter"**

As plaintiff explained during argument before the undersigned, the heart of this case is his assertion that the Commonwealth of Virginia has no power or threshold authority under the United States Constitution to assert jurisdiction over him because he is a sovereign citizen. In other words, and with the possible exception of his purported claim against Debra Shipp, plaintiff essentially premises the entire case on the proposition that the process involving all those who participated, from his traffic stop to his conviction, was and is "void." As a result, plaintiff believes he has stated claims under the Civil Rights Act, as amended, including his challenge to the validity of his conviction.

The Supreme Court has acknowledged that, under our system of dual sovereignty,"[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X; *Wyeth v. Levine*, 555 U.S. 555, 584 (2009). Of course this reservation would include the exercise of a state's police power. To the extent plaintiff premises his arguments on the proposition that provisions of the Constitution, like the Commerce Clause, remove jurisdiction from the states over the regulation of highways within their borders, it has long been recognized that, "[t]he commerce clause of the federal Constitution does not, however, deprive the states of the right to reasonably regulate under their police power the use of their public highways, and to that end to require a license and impose a reasonable charge therefor, for the

14

privilege of such use, even if thereby interstate commerce is incidentally affected, provided that such regulation, license, and charge bear a reasonable relation to the safe and proper maintenance and protection of such highways, do not obstruct or burden interstate commerce, and are not in conflict with federal legislation on the same subject enacted within constitutional limitations." *Liberty Highway Co. v. Michigan Public Utilities Commission*, 294 F. 703, 707 (E.D. Mich. 1923) (citing *Escanaba & Lake Michigan Transportation Co. v. Chicago*, 107 U.S. 678 (1883); *St. Louis v. Western Union Telegraph Co.*, 148 U.S. 92 (1893); *Minnesota Rate Cases (Simpson v. Shepard)*, 230 U.S. 352 (1913); *Hendrick v. Maryland*, 235 U.S. 610 (1915); *Kane v. State of New Jersey*, 242 U.S. 160 (1916); *Mackay Telegraph & Cable Co. v. City of Little Rock*, 250 U.S. 94 (1919)).

Even if the court were to construe plaintiff's claim as one for malicious prosecution, it is established in this Circuit that a § 1983 malicious prosecution claim cannot be maintained where the prosecution terminated unfavorably to the plaintiff. *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000); *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 183 (4th Cir. 1996). Plaintiff's conviction by the jury and his default of any appeal ends the inquiry.

Therefore, to the extent that plaintiff premises this action on his assertion that the Commonwealth of Virginia did not have power to regulate the use of highways within its boundaries and to enforce such regulations by the exercise of its police powers, his claim fails as a matter of law. For this reason, the claims plaintiff has alleged that are built on the underlying assertion that the Commonwealth of Virginia had no jurisdiction over him because he is a sovereign citizen not engaged in commercial activity should be dismissed, and it is so RECOMMENDED.

**SUMMARY**

For all the reasons set forth, the undersigned RECOMMENDS that the presiding District Judge enter an Order GRANTING the August 24, 2012 motion to dismiss filed by defendants Judge William

15

G. Barkley, Judge Cheryl V. Higgins, and Magistrate Michelle Jovan Scott; GRANTING the August 29, 2012 motion to dismiss filed by defendant Debra M. Shipp; GRANTING the August 29, 2012 motion to dismiss filed by defendant Jon R. Zug; GRANTING the August 29, 2012 motion to dismiss filed by defendants Fred Kirschnick, Kevin Sprouse, and Bob Villwock; and GRANTING the August 29, 2012 motion to dismiss filed by defendants County of Albemarle and Jason Taylor.

The Clerk is directed to immediately transmit the record in this case to the presiding District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record and mail a copy to the plaintiff.

ENTERED: _____
U. S. Magistrate Judge

Date: December 5 2012